The next case is R&L Carriers v. Qualcomm, Inc. The calendar downstairs, it showed a third case added for argument just today. And the number of the case is 2017-2469. When you are both ready, we'll wait until Mr. Vandenberg is set. Mr. White. Thank you, Your Honor. Your Honor, as counsel, may it please the Court. A district court abuses its discretion in finding a case to be exceptional if it bases that decision on an erroneous legal conclusion or a clearly erroneous assessment of the evidence. Here, the district court's decision is replete with both. Perhaps most emblematic of those errors is the district court's finding that this case is exceptional because R&L continued to assert infringement after supposedly being on notice for several years that the 078 patent was invalid in light of prior art. Let me take you to the discovery issue. Yes, Your Honor. Regarding that issue in the blue brief, you attempted to justify the decision to unilaterally proceed with subpoenas. And regardless of what R&L inferred from circumstances, why didn't it just wait until the court convened a status conference or ask the court if it could proceed with discovery or at the very least notify the court? I mean, as somebody who sat for a long time at the trial level, I would expect that. Your Honor, I think from our perspective at the time, the record reflects that we were asking the court and the parties for a stay of discovery for months in advance of that decision on the motion to stay at the end of December of 2014, I believe. Qualcomm and the other defendants vigorously opposed that. They wanted the case to proceed, and they wanted the case to proceed quickly. In fact, they were putting time constraints on our ability to go out and identify direct infringers, saying no, they should only have four months to get direct infringers. The trial court issues a decision saying we're not going to stay this case. This case has been around too long. We're going to get going now, now, now. And we inferred from that that our clock is ticking. In other words, we can't sit around and wait for clarification from the district judge because if we sit here for two months, that might be two of our four months to go find direct infringers. And that's why we said we'd better get started now in abundance of caution, and we informed Qualcomm that we're, in fact, going to go do that. When the court clarified and said, no, that's not what I meant, and I'm waiting for you guys to sit on the sidelines and wait until I clarify on this issue and we decide what we're going to do next, we immediately followed the court's instructions and did what we had done before, which is reach out to the third parties and say suspend your efforts until we get back to you. Look, I take responsibility for our misinterpretation of the court's order, and that's on us for misinterpreting the court's order, and the court was clear about that is what it meant. Does that make the case exceptional? The 14-day period that we reached out to people and restarted the subpoena process? When you reached out, you notified them, you sent them to subpoenas saying, the parties have resumed discovery. That's a correct quote. Why isn't that independently misleading? Well, it's incorrect in that the court made sure to tell us that, in fact, we weren't going to begin third-party discovery until the court said we were going to. It's not misleading if we believe that to be the case. You believe that the parties had agreed to resume discovery. We believe that the court had authorized the parties to begin discovery. Now, saying the parties had agreed, perhaps that was an unfortunate choice of words, but it was the basic premise of that. Whether the parties agreed or the court orders it, the basic premise was we were restarting discovery. And the idea that we had at that point in time a short window to do that discovery was, in our minds, a pressing need to go out and start looking for the direct infringers of the district court and Qualcomm was asserting that we had to have to maintain the case with a ticking clock. As I said, I am, of course, Judge O'Malley. I was at the trial level for a long time, and for 20 years before that, I was a trial lawyer. I never had any hesitation about calling opposing counsel and saying, hey, let's get the court online for a status conference. Judges do that all the time.  You make the call jointly, and the court will talk to you. That is my experience in normal cases as well, Your Honor. I would say that perhaps in this case the level of communication amongst counsel was not as robust as your normal experience and what my experience has been in other cases. I will say this. Counsel, you mentioned the standard is abuse of discretion. The trial court here considered the totality of the circumstances, a variety of issues. She found that the case was a complete and utter rout, that you lost on almost every single issue and the issues weren't even close. That's pretty strong language to overcome an abuse of discretion standard. Well, it is strong language. I will agree with you on that. I will say this. Clearly, this case did not go the way that we anticipated. We dealt with a number of things that we could not control ultimately in the case, including a decision from the Supreme Court that changed the law in the middle of us and a determination from this court that I respect and follow that the patent was subsequently amended in re-examination on prior art that we did not have prior to filing the lawsuit. So there were a number of things that occurred in this case that were not foreseen at the time the case was started. I will say this, though, Your Honor. But didn't the court, and that's important because you're right, that the initiation of the case or the investigation before the case, obviously that could not have been grounds for the exceptional case finding because of the original decision that we issued. But having said that, I thought that she excluded that and that Qualcomm actually excluded that in the fees that it requested. Well, the only fees I believe were excluded by Qualcomm were the fees that were attributable to its loss on the induced infringement aspect of the appeal in the first appeal in the case on the motion to dismiss. I thought they excluded all costs on the appeal. I would have to go back and look to determine that. I don't remember off the top of my head if that all costs on the appeal. I think all the fees for the appeal, at least for a third of it, was cut off because of the induced infringement claim which was kept in by this court on the first appeal. But I believe the remaining fees on the appeal to toss out the contributor infringement claim, the offer to sell claim, those were kept in by Qualcomm, but I'd want to go back and double check that. Let's talk about the re-exam. I understand that you say you didn't have prior art and that can't be exceptional for you not to fall on your sword on prior art that you weren't aware of. But having said that, there is case law that says the failure to respond to the developments in the case could result in a determination that the case is exceptional from that point forward. And I don't disagree with that case law, Your Honor. I think that, however, the developments in this case are not as the district court found. The district court concluded that we waited three years before submitting our re-examination petition in the face of this prior art. In fact, what we know is that we didn't receive the prior art upon which we submitted our re-examination petition until six months before we actually did so. The Rosenbaum patent was the key piece of prior art that we cited to the Patent and Trademark Office to say, look, this thing requires us to submit this for your consideration on re-examination. We ask that you do so. Before January of 2013, no one had submitted in their invalidity contentions the Rosenbaum prior art for anything. All these considerations were known to the district court, right? Who used her discretion in evaluating the totality. Yes, they were, Your Honor. But discretion does not include getting facts wrong. To say that we waited three years to submit this patent for re-examination in the face of this prior art is clearly incorrect. We did not get the Rosenbaum patent until six months before that re-examination. When you look at our re-examination petition, the Rosenbaum patent is connected with every single one except N&M, which had been cited in February of 2012 or 2010, but we submitted that only because we knew if we didn't, we would certainly be hiding something from the Patent and Trademark Office. So we submitted it out of a bunch of caution. They say, look, this wasn't before you then. We didn't have it until the case was filed. Consider this as well. But the fighting... But it was N&M that the court was looking at, not Rosenbaum, right? I'm not entirely sure what the court was looking at. It might have been talking about N&M, but the simple point is that N&M by itself was only one of the several pieces of the re-examination petition that was submitted. The vast majority of the re-examination petition that was submitted was based upon Rosenbaum in combination with the February 2010 invalidity contentions. But wasn't it N&M that the board relied upon in rejecting certain of the claims? Well, N&M was part of that process, but we disagreed with that, obviously, with the board in terms of its rejection of N&M, and we were able to craft what we thought were nonsubstantive changes to the patent through that process that got the patent over and above that prior art. I think one of the important points is that the underlying basis and premise of the district court's conclusion is that somehow the patent was invalidated in this process. It wasn't. I want to give you a chance to respond to something that's raised in the red brief, and that is at 46, at the bottom in the blue brief, you say that that conclusion flies in the face of this court's holding in Special Devices, Inc., that under Section 285, quote, the amount of the fee award must bear some relation to the extent of the misconduct. And in the red brief, they say you, quote, misleadingly omitted a key part of the sentence, and it looks pretty key to me. That is, what the whole sentence says is when the attorney's fees under 35 U.S. 285 are awarded solely on the basis of litigation and misconduct. And then keep going to what you said. I want you to respond to that. I'm searching through the briefs right now to find that particular point. Yeah, go to 56, and you'll see the language that you've cropped. 56, the red brief, and it's 46 of your blue briefs. I'm going to actually my required brief to respond to that particular point. I apologize, Your Honor. Maybe I can address this in rebuttal if I have an opportunity to go back to look at that case Fine. I take those things seriously. And I understand and respect your hands. I'll take a look at that and get right back to you. You're into your rebuttal now, so you can save it and respond later. Thank you, Your Honor. Mr. Vandenberg. Thank you, Your Honor. May it please the court. Judge Beckwith is a veteran judge who was deeply involved in this multi-district litigation case for more than eight years. She did not hand off any aspect of this case to a magistrate. She personally handled virtually every motion that was brought to her in the case, and she personally conducted more than 15 conferences with the parties. So she was by far in the best position. Let's get to the substance, OK? Yes, please. She relied on three disparate pieces to say that the entirety of the case was exceptional, right? I don't think that's quite correct, Your Honor. She identified three specific things, but then in her fourth, she had a fourth for sure that was considering the overall circumstances of the case. And as Judge Lurie mentioned, the utter rout of R&L by all. Well, actually, the utter rout was because the law changed on 101, right? I mean, that was a dramatic change, and we've said so in terms of whether or not people have waived any argument with respect to 101. That was one particular aspect of the utter rout. And even on that one, as I believe you mentioned, the law is clear that a party needs to reassess their position as the case goes on. I don't have the year of Alice right off the top of my head, but it was in 2017 when that issue finally came to the court. So even on that issue, they're required to reassess. They were required to reassess on the validity issue. Yeah, but I mean, even after Alice, our court struggled with the application of it, as did everybody else. I mean, are we supposed to say that everyone that fought a 101 motion by definition, that those cases are all exceptional? Well, again, her decision wasn't any one thing in particular. The utter rout was on all issues. There was, and she did, that sentence is broad enough to encompass all defendants. So it's not just the things that are identified relative to Qualcomm. Well, but you can't award Qualcomm fees based on what happened with other defendants. No, but in evaluating the overall circumstances of the case, it is. Well, that's the case. And every time we have an MDL, that the court is allowed to just say, well, you know, there was defendant A, and even though they had a great case against defendant C, I'm going to say that it's exceptional because they didn't have a great case against defendant A? What the judge can do is look at the conduct relevant to Qualcomm in the context of the overall case. So, for example, you see several times she referenced that an argument relative to Qualcomm was similar to what the plaintiffs had argued relative to Pitt, Ohio, which is the case that went directly to summary judgment. It didn't come to this court. And ultimately, fees were awarded because they never were able to come forward with any evidence to support their infringement allegations. And certainly, you know, for her to say, look,  I'm going to look at the conduct relative to Qualcomm in the context of what I've seen from them in the entire case was certainly reasonable and not an abuse of discretion for her to have done. Well, when we get to, assuming we get past the exceptionality finding and we get to the fee award, part of my problem is that she actually said that there is no causal relationship, there need not be any causal relationship between the conduct cited in support of the court's exceptional case finding and the fees incurred by Qualcomm. That's not a correct statement of the law, is it? I'm sorry, where are you quoting from? I'm quoting from the court's opinion. Yes. I'm not recalling that particular sentence. She certainly, she quoted this court as saying she was not required when the overall circumstances of the case show exceptionality, she was not required... Well, we have certainly said that in some instances the entirety of the fees may be appropriate. But we have said there has to be a causal relationship and we had to say that because the Supreme Court said it. Correct, Your Honor. You have to say how much of the fees are tied to these specific findings of misconduct. And while she at the end said it was a total rout, she really only cited three separate pieces. Well, she did mention the other pieces, so I don't want to give up on that. She cut back on the fees, didn't she? Right, she did. First of all, she did not award Qualcomm all of its fees. The question came up earlier and I can clarify that for certain. Qualcomm did not see any fees for the appeal to this court. She deducted $180,000, $182,000. And in addition to what Qualcomm didn't even include in their request. How much did Qualcomm exclude? And what did it exclude? It excluded the entire appeal to this court in 2011 and 2012. And it excluded a third of its cost associated with the time period where that motion to dismiss was before the district court and laid out in its very detailed fee request the other things that were going on in that same time frame that justified two-thirds of the time. And there were a number of other smaller issue things that were excluded in terms of timekeepers with low billing hours. Also pointing out that Qualcomm actually had a cost-sharing relationship with another one of the defendants, and so it wasn't seeking any of the fees that were incurred relative to Qualcomm, but that Qualcomm didn't actually pay for, that weren't billed to Qualcomm. The other thing that I think is important on this issue of the amount of fees awarded is that the things that the judge did identify are not simply specific instances of litigation misconduct. They do go to the fundamental strength of the case. Let's remember that Qualcomm was not accused... Did you argue or move for summary judgment of anticipation based on N&M? We did not, Your Honor. As most courts do, they have a schedule in which they want to hear issues, and that was not an issue that was right before the court. Did you ask her? Did you say, look, this one is key and it can be dispositive? It was so clear that N&M was anticipatory? We did not, Your Honor. But I do want to clarify the record on this issue because counsel keeps trying to say that when they went to the Patent Office in 2013 that it really had nothing to do with N&M. That was something that was focused on by the Patent Office, not by us. We were focused on the Rosenbaum reference. That just simply is not correct. They were the ones that identified N&M in their reexamination request as the only anticipatory reference that was being submitted in reexamination. This wasn't some, you know, this is just part of our duty of candor, you know, read our law in IDS. This was the anticipatory reference they brought to the Patent Office, and this was three years after they had told the judge that they had closely studied the prior art cited by the defendants and that none of them called into question at all the validity of their patent. So, again, this idea that N&M just came out of nowhere to them is just unsupportable by the record here and certainly was not an abuse of discretion for Judge Beckwith to conclude that that was an important aspect that went to the heart of the strength of this case. And its continued litigation. And its continued litigation. And let's also not lose sight of the contributory infringement pleading. There were only two theories of liability here. Qualcomm was not a direct infringer. It was contributory infringement and inducement. So half of their case got taken away on a pleading that, as Judge Beckwith, I think was very, certainly within her discretion and I think is correct for her to find, never should have been pled because it was clear on the face of their own pleading that Qualcomm's software and hardware had substantial non-infringing uses. Let me also talk briefly about that third aspect of the judge's order, the violation of a third-party discovery. Clearly, Judge Beckwith gave that a lot of weight, but it was appropriate for her to do so in this circumstance for a couple of extra reasons that didn't come up in the discussion earlier this morning. One of them is that this was not the first time that this judge had experienced what she considered to be inappropriate behavior by the plaintiff in this case. Again, it might... Were there communications back and forth between counsel? There were communications. As soon as the defendants received notice of this reactivation of subpoenas, they reached out to... The plaintiff pointed out it was contrary to the order and stopped and we're going to get this in front of the judge as soon as we can, and they didn't at that point say, oh, I guess you're right, we'll back off. It wasn't until we got it in front of Judge Beckwith, and that did happen quickly, but they did force this issue to actually go before her. The other aspect... Well, I suppose my question is more along the lines of... Your opposing counsel said, well, this is a case where we weren't talking to each other in the normal course. Were there communications going back and forth in the normal course? Oh, I'm sorry. Yes, there were many communications going back and forth in the ordinary course. The other reason I think that Judge Beckwith recognized this as a particularly important aspect is because we are talking about not just third parties in the abstract, but customers. Judge Beckwith's a veteran judge, and she knows that whenever you start subpoenaing customers, you are risking interfering with customer relationships. And here we weren't talking about one or two subpoenas, we were talking about dozens of really broad, onerous subpoenas that had been issued to these customers. Qualcomm had gone in the first time to ask to have these stayed because of the danger of those. And so given that, when R&L four months later unilaterally reactivates those subpoenas, issues brand-new subpoenas, it's not surprising and certainly very reasonable for Judge Beckwith to have viewed that as a major transgression that when viewed with these other things that are identified in her order render this case exceptional. Just briefly, Your Honors, on, again, going back to the issue of the amount of the fees, Judge Beckwith's order on that, again, did exclude a substantial amount of Qualcomm's fees. Qualcomm excluded part of them, she excluded still more, and this Court's Homeland Housewares case is sort of directly on point. Well, actually, no. Those cases are the cases that you cite for the proposition that you can award all fees and you don't have to specifically say that this dollar relates to that, is because in those cases it was the entirety of the litigation that was the basis for the exceptional case finding. It is not the same thing as, I mean, it is a misstatement of the law for her to say there is no causation requirement. There is a causation requirement. We have said in exceptional circumstances that where it so pervades the litigation, then you don't have to say why you're dividing it up. But the normal requirement, the one the Supreme Court has laid down, is that there has to be a causal relationship. And I guess my problem is if she misstates the law and then proceeds to award fees with a misunderstanding of the law, how can I be comfortable that she got it right? Again, the Supreme Court cases that deal with that causation requirement are specifically in the realm of litigation misconduct. And that's where Section 285 is, as the Supreme Court said in Octane Fitness, it's broader than that. It requires the totality of the circumstances and to look at overall whether the case stands out in terms of the strength of the arguments and the way in which it was litigated, which I think you can interpret as... Well, that goes to the exceptionality finding. That's different than the propriety of the particular field. Right. Then I think the ultimate answer there is what she ended up with did reflect the extent to which the case was exceptional because she did look at the overall circumstances. She did conclude that she identified the three specific instances, at least two of which go to the strength of the case in addition to litigation misconduct, and then also discussed the overall route, which again goes to what's identified in Octane Fitness, which is the overall strength of the case. Unless Your Honor has any further questions. Thank you, Counsel. Thank you. Mr. White has some more bubble time. Thank you, Your Honor. I want to start just by talking about the reexamination issue again. The fundamental premise of the district court's reexamination finding of exceptionality is that we should have known that this patent was going to be invalidated by the prior art, and we should have done something about it sooner. The problem with that is the patent was never invalidated by the prior art. We always took the position that the prior art did not invalidate the patent. We were able to negotiate changes that eventually made this court determine one was a substantive change to this patent, but the prior art never invalidated the patent. We were not required to go to the PTO for reexamination. We chose to do so as a litigation strategy earlier than this issue would have been addressed in the normal course of the district court proceeding, giving up the protections that we would have in the district court proceeding. We went affirmatively giving up those protections to seek reexamination, a determination of validity with respect to this patent, and we came out of it with a valid patent. How in the world can we be exceptional for us to have assumed that this patent would be invalid when it was never invalidated based on the prior art? That, in my opinion, is a clearly erroneous finding. It cannot be right. It is not right. Setting aside the fact that we did not wait three years, and to Judge O'Malley's question, Qualcomm nor any of the other defendants ever said to this trial court, this N&M reference is dispositive. Give me leave. And Judge Wallach, you talk about being a trial judge. How many times have you had in front of you parties who really believed that they had the silver bullet to the plaintiff's case? Sit back and go, you know, I'm just going to sit back and let the fees run up, let time go on. If you really believe you have that, you go to the district judge and you say, I want leave to assert now that this thing puts an end to this case. No one, not Qualcomm, not any of the other defendants that did that. Why? Because they didn't believe at that time that it was so clear that we were unreasonable for proceeding in this case because they had cited the N&M reference. We took the position throughout that N&M was not dispositive of this case. Now, before my time runs up, I want to respond to Judge Wallach's question earlier about the special. Don't tell me large audience display. I won't buy that. It's a different portion of the quote, and it's used differently. I will not, Your Honor, following your instructions, I will not attempt to justify it based on large audience display. I will tell you that's the reason why we put it in there. We followed the statement from the court in large audience display that cited that portion of special devices and asserted that as an assertion as the court did in large audience display. I will not, however, following your instructions, attempt to justify that. I will simply explain it as to why it was in there. And I might see my time is up. I thank you, Your Honors, for your time and your attention. Thank you, counsel. We'll take the case under review. All rise.